**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE )
  )
  )   ID No. 1802016819
v. )   In and For Kent County
  )
RANDELL MATTHEWS, )
    Defendant. )

**ORDER**

Submitted: August 23, 2018
Decided: August 27, 2018

*Upon Defendant's Motion to suppress*
**DENIED**

On this the 27th day of August 2018, having considered Defendant Randell Matthews's (hereinafter "Mr. Matthews") motion to suppress and the State's response, it appears that:

Mr. Matthews seeks to suppress all evidence resulting from the alleged illegal seizure of his person and the results of certain field sobriety tests administered to him by Officer Krumm on February 25, 2018. The facts cited herein are as they appear to the Court following consideration of the parties' submissions as well as the evidence and argument presented at the hearing on August 23, 2018.

On the date in question, Dover Police Officer Krumm responded to a report of a single vehicle accident in which the vehicle had allegedly struck the side of a building. The responding officer found Mr. Matthews sitting on the ground near a

vehicle matching the description from the report. Upon making contact with Mr. Matthews, Officer Krumm noted that he appeared confused, was moving sluggishly, and was stumbling. Officer Krumm further noted that Mr. Matthews was slurring his speech as well as speaking slowly and incoherently. Mr. Matthews began to administer a field sobriety test, but Mr. Matthews did not cooperate and said that it was "cold." The weather that night was very cold and it was raining. In response, Officer Krumm offered to transport Mr. Matthews to the Dover Police Station, located approximately three to four blocks away, to be administered field sobriety tests in a warmer "controlled environment." Mr. Matthews agreed. Mr. Matthews was patted down and transported to the station in the back of the police cruiser in handcuffs. There, Officer Krumm administered sobriety tests, and at that time, Mr. Matthews was arrested on suspicion of driving under the influence.

In his motion to suppress, Mr. Matthews contends that his removal to the Dover Police Station for the purpose of administering sobriety tests constituted an illegal seizure of his person, and that the results of the subsequent sobriety tests were obtained only by exploitation of the initial illegal seizure and are therefore to be suppressed.[1] Mr. Matthews does not object to the validity of the initial detention, the field sobriety tests and their results, or his eventual arrest (except that the test results and subsequent arrest are allegedly tainted by the illegality of the prior seizure of his person). The narrow issue at hand is whether the transportation of Mr. Matthews

---

[1] Defense counsel additionally argued that Mr. Matthews's consent to be transported to the station was not knowing and voluntary because he was not informed that he could refuse and further that he would have to be handcuffed and patted down before being transported. The Court will not address these arguments because it does not view Mr. Matthews's removal from the scene to be authorized by consent but rather by the inherent police authority to perform an investigatory stop upon witnessing a traffic violation or observing facts giving rise to reasonable suspicion that a crime has been committed. *Holden v. State*, 23 A.3d 843, 847 (Del. 2011).

from the site of the accident to the police station constituted an unlawful seizure of his person.

The State replies that transporting Mr. Matthews to the nearby police station when inclement weather prevented the effective administration of the tests at the scene did not constitute an illegal seizure and that the subsequent results of the field sobriety tests were not obtained by exploitation of an illegal seizure of his person.

The proper scope of an investigatory detention is "determined by the seizure's 'mission'" and must be carefully tailored to the underlying justification.[2] Delaware courts have previously held that officers may not remove a motorist from the scene of the initial investigation when the removal is "wholly unrelated to the purposes of the initial detention."[3] Removal of motorists from the scene to a police station for the purpose of performing field sobriety tests has been permitted in circumstances where due to dangerous roadside conditions and inclement weather there are "no suitable or safe means of conducting the requisite tests,"[4] and thus such transportation is "reasonable and necessary."[5]

Here, the parties concur that Mr. Matthews was initially validly detained: the record indicates that the detention was based on the officer's belief that a traffic violation had occurred and that Mr. Matthews may have been driving under the influence. As to the sole point of contention, whether the removal of Mr. Matthews from the scene of the accident was justified due to inclement weather conditions, the Court finds that it was. The Court heard credible testimony that the weather was rainy and very cold, that Mr. Matthews complained of the cold, and that the officer reasonably concluded that Mr. Matthews would be unable to perform the tests under

---

[2] *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015).
[3] *Hicks v. State*, 631 A.2d 6, 12 (Del. 1993).
[4] *Williams v. Shahan*, 1993 WL 81264, at *2 (Del. Super. Mar. 10, 1993).
[5] *State v. Kang*, 2001 WL 1729126, at *7 (Del. Super. Nov. 30, 2001).

then current conditions. The Court also viewed a video recording showing that Mr. Matthews appeared either unwilling or unable to perform the initial field test and verbally complained that it was "cold." The officer in this case acted appropriately by transporting Mr. Matthews to a warm and dry area only three to four blocks away to perform the field sobriety tests.

Mr. Matthews asserts that his case is analogous to a previous decision of this Court in *State v. Maxwell*, which affirmed a decision of the Court of Common Pleas that deemed unjustified an officer's determination to transport a defendant to the police station for field sobriety tests when the weather was cold and rainy.[6] The Court finds the analogy inapt. In *Maxwell*, this Court gave great deference to the findings of the Court of Common Pleas, which had held that, upon the testimony of the road and weather conditions presented, there was not a sufficient safety justification to transport the defendant multiple miles to the police station.[7]

In contrast here, the Court is convinced, based on the testimony presented, that the transportation of Mr. Matthews to the police station was reasonable and necessary given the weather conditions, and that the additional intrusion of transporting Mr. Matthews to a location only four blocks away was narrowly tailored to the officer's goal of investigating a possible DUI.[8] The Court's ruling here is narrow, and does not imply that transportation of a DUI suspect is justified whenever it is cold and raining, nor that transportation is justified regardless of the distance travelled. This ruling is tied to the particular facts of this case, which rendered transportation reasonable and necessary for the administration of the tests.

---

[6] *State v. Maxwell*, 1996 WL 658993, at *2 (Del. Super. Aug. 30, 1996).

[7] *Id.* at *3.

[8] *See Kang*, 2001 WL 1729126, at *8 (Court concluded that transportation of suspect to hospital to administer field sobriety tests did not convert investigatory detention into arrest and therefore did not require predicate determination of probable cause).

**WHEREFORE**, Mr. Matthews's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

Noel Eason Primos, Judge

NEP/wjs
*Sent via email*
oc:    Prothonotary
cc:    Stephanie H. Blaisdell, Esquire
       Dennis Kelleher, Esquire